EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico <br><br> Peticionario <br><br> v. <br><br> Víctor M. Morales Roldán <br><br> Recurrido | Certiorari <br><br> 2024 TSPR 54 <br><br> 213 DPR \_\_\_ |

Número del Caso:  CC-2023-0276

Fecha:  29 de mayo de 2024

Tribunal de Apelaciones:

    Panel XI

Oficina del Procurador General:

    Hon. Fernando Figueroa Santiago
    Procurador General

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Isimar Ocasio Franco
    Procuradora General Auxiliar

Representante legal de la parte recurrida:

    Lcdo. Javier H. Jiménez Vázquez
    Lcdo. Osvaldo Sandoval Báez

Materia: Ley Núm. 404-2000 – Ente con facultad para atender una solicitud de devolución de un arma de fuego y su respectiva licencia luego de que las acusaciones son desestimadas por incumplirse con los términos de juicio rápido.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Víctor M. Morales Roldán<br><br>Recurrido | CC-2023-0276 | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 29 de mayo de 2024.

En esta ocasión, tenemos la delicada y sensible tarea de determinar a qué foro debe recurrir toda persona que desee solicitar la devolución de un arma de fuego y su respectiva licencia —incautadas como parte de un proceso penal por alegados actos de violencia doméstica— luego de que las acusaciones son desestimadas por incumplirse los términos de juicio rápido. Al llevar a cabo esta encomienda, y en el ejercicio de un balance justo de los intereses envueltos, entendemos que la Policía de Puerto Rico (Policía)[1] es la entidad adecuada para evaluar este tipo de petición.

Veamos los hechos que dan base a la controversia ante nuestra consideración.

---

[1] Al amparo de la Ley Núm. 168-2019, según enmendada, conocida como Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 461 *et seq.* (Ley Núm. 168-2019) el ente administrativo es denominado como "Negociado de la Policía de Puerto Rico".

# I

El 27 de julio de 2021, el Ministerio Público presentó dos denuncias en contra del Sr. Víctor Morales Roldán (señor Morales Roldán o recurrido) por presuntas infracciones al Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA sec. 601. En particular, el Estado alegó que el señor Morales Roldán mantuvo un patrón de acecho, persecución y maltrato contra su expareja. En ese sentido, detalló que el recurrido constantemente: (1) contactaba a la fémina, a su familia y a terceros allegados mediante llamadas y mensajes de textos; (2) acudía al lugar de trabajo de esta con el fin de intimidarla y acosarla; y (3) en una ocasión la agarró por el cuello, le dio con la mano en la boca y, al caer ambos al suelo, la agredió con varios puños en diferentes partes del cuerpo.

Tras evaluar los méritos de las denuncias, el Tribunal de Primera Instancia encontró causa probable para arresto y expidió una Orden de Protección Ex Parte en contra del recurrido. Además, luego de celebrarse la Vista Preliminar el 15 de septiembre de 2021, el foro primario determinó que existía causa probable para presentar las debidas acusaciones.[2] Sin embargo, el 18 de enero de 2022 el

---

[2] Inicialmente, el juicio quedó pautado para el 2 de noviembre de 2021. No obstante, debido a varias incidencias procesales, incluyendo que el Ministerio Público no tuvo la prueba de cargo disponible, el mismo tuvo que ser pospuesto en dos ocasiones. La Orden de Protección Ex Parte quedó extendida en ambas instancias.

Tribunal de Primera Instancia emitió una Sentencia mediante la cual desestimó el proceso penal al amparo de la Regla 64(n)(4) de Procedimiento Criminal, 34 LPRA Ap. II, por haberse violado los términos de juicio rápido.

Así las cosas, el 18 de mayo de 2022, el señor Morales Roldán presentó una Moción Solicitando a la Policía de Puerto Rico [la] Devolución de Huellas y Documentos. El foro primario procedió a conceder la misma e instruyó a la Policía a que eliminara del sistema computarizado y le devolviera al recurrido las huellas dactilares, los documentos y las fotografías que le fueron tomadas durante la etapa investigativa.

Posteriormente, el 2 de noviembre de 2022, el señor Morales Roldán presentó una Moción en Solicitud de Orden alegando que, ante su "exoneración" y conforme al Art. 2.08 de la Ley Núm. 168-2019, según enmendada, conocida como Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 462g (Ley Núm. 168-2019) procedía que se ordenara a la Policía a devolverle la licencia de armas y el arma de fuego que le fueron ocupadas al comienzo de estos casos. No obstante, el Tribunal de Primera Instancia rechazó su petición por entender que "[e]sa determinación la tomar[ía] la Policía de Puerto Rico dentro de su facultad administrativa de la Ley de Armas".[3]

El señor Morales Roldan solicitó reconsideración. Adujo que, a diferencia de la legislación anterior, la Ley

---

[3] Apéndice de *Certiorari*, págs. 19-20.

Núm. 168-2019, *supra*, y el Reglamento Núm. 9172 de 17 de marzo de 2020, conocido como Reglamento para la Administración de la Ley de Armas, no contemplan un procedimiento administrativo para solicitar la devolución de una licencia de armas y un arma de fuego incautadas por razón del comienzo de un proceso penal. Por lo cual, entendía que era el foro judicial quien tenía el deber de dilucidar y atender su solicitud. No obstante, el foro primario no reconsideró su postura.

En vista de ello, el señor Morales Roldán presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Reiteró que bajo el ordenamiento jurídico actual la Policía no está facultada a llevar a cabo un proceso administrativo al respecto. Arguyó que, por el contrario, era el foro judicial quien debía ordenar la devolución de la licencia y el arma de fuego conforme al deber ministerial que le impone el Art. 2.08 de la Ley Núm. 168-2019, *supra*.

Por su parte, el Estado se opuso. Argumentó que la licencia de armas del recurrido fue expedida bajo la derogada Ley Núm. 404-2000, según enmendada, conocida como Nueva Ley de Armas de Puerto Rico, 25 LPRA ante sec. 455, *et seq.* (Ley Núm. 404-2000) por lo que entendía que era esta la que debía aplicar al caso. Además, alegó que, si bien coincidía en que el Tribunal de Primera Instancia tenía competencia para atender la petición en cuestión, no existía una obligación de conceder la misma, pues el señor

Morales Roldán no fue absuelto de las acusaciones en su contra. A su entender, el proceder más razonable, práctico y a tono con las disposiciones de la derogada Ley Núm. 404-2000, *supra*, era que el Tribunal de Primera Instancia llevase a cabo un proceso evaluativo para considerar la solicitud del recurrido.

Tras evaluar el caso, el Tribunal de Apelaciones emitió una Sentencia por medio de la cual revocó el dictamen del foro primario.[4] Razonó que el Art. 2.08 de Ley Núm. 168-2019, *supra*, era claro al disponer que los tribunales tienen un deber ministerial de ordenar la inmediata devolución de un arma de fuego una vez el acusado es encontrado no culpable. Concluyó que dicha disposición debía ser aplicada aun en casos como el de autos, en el que no media una decisión absolutoria final y firme. Por lo cual, devolvió el asunto al Tribunal de Primera Instancia para que ordenara a la Policía a devolverle al señor Morales Roldán la licencia y el arma de fuego que le fueron ocupadas. El Estado presentó una Moción de Reconsideración, pero el foro apelativo intermedio denegó acogerla.

Todavía inconforme, el Ministerio Público presentó un recurso de *certiorari* ante nos en el cual levantó el señalamiento de error siguiente:

El Tribunal de Apelaciones erró al determinar que el Tribunal de Primera Instancia tiene la

---

[4] La Jueza Lebrón Nieves emitió un voto disidente en el cual expresó, en síntesis, que el foro primario actuó correctamente al referir el asunto a la consideración de la Policía de Puerto Rico.

obligación de ordenar al Negociado de la Policía devolver inmediata y automáticamente, sin mayor evaluación y consideración, el arma de fuego y su respectiva licencia, a pesar de que el señor Morales Roldán no obtuvo una determinación de no culpabilidad, final y firme, como expresamente dispone la Ley de Armas de Puerto Rico.

Contando con la comparecencia de ambas partes, y habiendo ya expedido el recurso, nos encontramos en posición de resolver.

**II**

**A.**

La Segunda Enmienda de la Constitución de los Estados Unidos consagra el derecho fundamental de las personas a poseer y portar armas de fuego. Enmda. II, Const. EE. UU., LPRA, Tomo 1, ed. 2023, pág. 186. Dicho mandato se ha extendido a los Estados en virtud de la Cláusula de Debido Proceso de Ley contenida en la Decimocuarta Enmienda de la Constitución Federal. *McDonald v. Chicago*, 561 U.S. 742 (2010). Además, se ha aclarado que este derecho es uno individual. *Pueblo v. Rodríguez López et al.*, 210 DPR 752 (2022); *Disctrict of Columbia v. Heller*, 554 U.S. 570 (2008). Por lo cual, las personas pueden poseer y portar armas para su defensa propia tanto dentro como fuera de sus hogares. Véase: *Disctrict of Columbia v. Heller*, *supra*; *McDonald v. Chicago*, *supra*; *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022). Sin embargo, no es un derecho absoluto ni ilimitado. *District of Columbia v. Heller*, *supra*, pág. 626. Ello pues, no existe un derecho a poseer y portar cualquier arma, de

cualquier manera y para cualquier propósito. Íd. En ese aspecto, los Estados pueden imponer regulaciones y limitaciones, siempre y cuando cumplan con el *text-and-history test* desarrollado por la Corte Suprema Federal en *New York State Rifle & Pistol Assn., Inc. v. Bruen*, *supra*.

**B.**

El 11 de septiembre de 2000, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 404-2000, *supra*, para, entre otros fines, orientar a las personas autorizadas a manejar un arma de fuego a que lo hiciesen de manera responsable y, además, apercibir al delincuente de las consecuencias a las que se exponía si incurría en actos criminales mediante el uso de estas. Exposición de Motivos de la Ley Núm. 404-2000 (2000 [Parte 3] Leyes de Puerto Rico 2602). Si bien es cierto que esta legislación fue derogada el 11 de diciembre de 2019 al aprobarse la Ley Núm. 168-2019, *supra*, esta última expresamente expuso que **"las disposiciones de [la Ley Núm. 404-2000, *supra*] serán aplicables a las licencias obtenidas o renovadas bajo su vigencia, hasta que tales licencias venzan o se renueven bajo la [Ley Núm. 168-2019, *supra*]"**. Art. 7.24 de la Ley Núm. 168-2019 (2019 [Parte 3] Leyes de Puerto Rico 2226). (Negrillas suplidas). Por lo cual, en vista de que en este caso la licencia de armas del señor Morales Roldán fue expedida el 17 de julio de 2018, las disposiciones de la Ley Núm. 404-2000, *supra*, son las que regulaban todo lo

concerniente a la petición de devolución instada por el recurrido ante el Tribunal de Primera Instancia.[5]

## C.

Aclarado este asunto, resulta pertinente recordar que, recientemente, en *Pueblo v. Rodríguez López et al.*, *supra*, tuvimos la oportunidad de evaluar la constitucionalidad del Art. 5.04 de la Ley Núm. 404-2000, *supra*, 25 LPRA ante sec. 458c, el cual impone la obtención de una licencia como requisito para poder poseer y portar un arma de fuego en Puerto Rico. En aquella ocasión, al analizar la controversia a la luz del marco jurídico expuesto en *New York State Rifle & Pistol Assn., Inc. v. Bruen*, *supra*, arribamos a la conclusión de que el mencionado artículo era válido por ser "consistente con la tradición histórica de regular las armas de fuego nacionalmente mediante la exigencia de una licencia o un permiso". *Pueblo v. Rodríguez López et al.*, *supra*, pág. 782.

Así las cosas, para obtener una licencia de armas en Puerto Rico, el Art. 2.02 de la Ley Núm. 404-2000, *supra*, requiere que la persona solicitante demuestre cumplir, entre otras cosas, con las cualificaciones siguientes:

[...]

**(7) No estar bajo una orden del tribunal que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, alguno de los niños de ese**

---

[5] Al amparo del Art. 2.02(F) de la Ley Núm. 404-2000, según enmendada, conocida como Nueva Ley de Armas de Puerto Rico, 25 LPRA ante sec. 456a, *et seq.* (Ley Núm. 404-2000), las licencias de armas tienen vigencia por un periodo de cinco (5) años desde su expedición.

**compañero o a persona alguna, y no tener un historial de violencia.**

[...]

**(12) Someter en su solicitud una (1) declaración jurada de tres (3) personas que no tengan relación de consanguinidad o afinidad con el peticionario y que so pena de perjurio, atestigüen que el peticionario goza de buena reputación en su comunidad, y que no es propenso a cometer actos de violencia, por lo que no tienen objeción a que tenga armas de fuego. Esta declaración será en el formulario provisto por el Superintendente junto a la solicitud de licencia de armas.**[6] 25 LPRA ante sec. 456a. (Negrillas suplidas).

De igual forma, al momento de renovar una licencia de armas, resulta necesario que la persona solicitante acredite que las circunstancias que dieron base a su otorgamiento se mantienen igual o, por el contrario, que indique de qué forma han cambiado. Íd.

Por su parte, el Art. 2.11 de la Ley Núm. 404-2000, *supra*, le concede al Superintendente de la Policía la facultad para rehusarse a expedir, o de haber expedido revocar, una licencia de armas a toda persona solicitante que hubiese:

> [S]ido convicta, en o fuera de Puerto Rico, de cualquier delito grave o su tentativa, **por conducta constitutiva de violencia doméstica según tipificada en las secs. 601 et seq. del Título 8,** por conducta constitutiva de acecho según tipificada en las secs. 4013 a 4026 del Título 33, ni por conducta constitutiva de

---

[6] En *Rolón Martínez v. Supte. Policía*, 201 DPR 26 (2018), aclaramos la facultad de la Policía para revocar una licencia de armas por el hecho de que la persona tuviese un historial de violencia. En ese aspecto, dispusimos que, bajo esta causal, no era necesario que la persona hubiese sido declarada culpable de delito alguno. Así pues, resulta suficiente que se haya incurrido en algún acto violento o agresivo que, a juicio de la Policía, requiera la remoción de la licencia de armas para evitar la posible comisión de un acto desafortunado en el futuro.

maltrato de menores según tipificada en la Ley de Diciembre 16, 1999, Núm. 342. Disponiéndose, además, que tampoco se expedirá licencia alguna a una persona con un padecimiento mental que lo incapacite para poseer un arma, un ebrio habitual o adicto al uso de narcóticos o drogas, ni a persona alguna que haya renunciado a la ciudadanía americana o que haya sido separad[a] bajo condiciones deshonrosas de las Fuerzas Armadas de los Estados Unidos o destituido de alguna agencia del orden público del Gobierno de Puerto Rico, ni a ninguna persona que haya sido convicta por alguna violación a las disposiciones de este capítulo o de la anterior Ley de Armas. 25 LPRA ante sec. 456j. (Negrillas suplidas).

De manera similar, los tribunales también tienen facultad de suspender provisionalmente una licencia de armas y ocupar inmediatamente un arma de fuego y sus municiones en situaciones en las cuales se determine causa probable para ordenar el arresto de una persona que posea estos bienes. Sobre el particular, la Ley Núm. 404-2000, *supra*, dispone que:

**Luego de una determinación de causa probable para el arresto de cualquier persona a la cual se le haya otorgado una licencia de armas**, por la comisión de cualquiera de los delitos especificados en la sec. 456j de este título o de violaciones a las disposiciones de este capítulo, **el tribunal suspenderá provisionalmente la licencia hasta la determinación final del procedimiento criminal.** Disponiéndose, además, que el tribunal ordenará la ocupación inmediata de la totalidad de las armas y municiones del concesionario para su custodia en el Depósito de Armas y Municiones de la Policía. **De resultar el acusado con una determinación de no culpabilidad, final y firme, el juez ordenará la inmediata devolución de su licencia de armas y de las armas y municiones.** Toda arma y municiones así devueltas deberán entregarse en las mismas condiciones en que se ocuparon. El concesionario estará exento del pago por depósito. **De resultar la acción judicial en una de culpabilidad, final y firme, el Superintendente revocará la licencia**

**permanentemente y se incautará finalmente de todas sus armas y municiones**. Art. 2.07 de la Ley Núm. 404-2000, *supra*, 25 LPRA ante sec. 456f. (Negrillas suplidas).

A su vez, el Art. 2.13 de la Ley Núm. 404-2000, *supra*, inviste de autoridad a los agentes del orden público para que, en circunstancias específicas, puedan incautar armas, licencias y municiones. Además, contempla un procedimiento administrativo mediante el cual se puede solicitar la devolución de las armas que sean ocupadas bajo esta disposición.[7]

Como último punto, debemos destacar que el Art. 7.07 de la Ley Núm. 404-2000, *supra*, establece que:

**Salvo que otra cosa se disponga expresamente, todas las determinaciones que tengan que realizarse en virtud de este capítulo se regirán por las disposiciones de vistas informales,**

---

[7] En particular, el mencionado artículo dispone que:

Cualquier agente del orden público ocupará la licencia, arma y municiones que posea un concesionario cuando tuviese motivos fundados para entender que el tenedor de la licencia hizo o hará uso ilegal de las armas y municiones, para causar daño a otras personas; por haber proferido amenazas de cometer un delito; por haber expresado su intención de suicidarse; cuando haya demostrado reiteradamente negligencia o descuido en el manejo del arma; cuando se estime que el tenedor padece de una condición mental, se le considere ebrio habitual o es adicto a sustancias controladas; o en cualquier otra situación de grave riesgo o peligro que justifique esta medida de emergencia. Un agente del orden público también ocupará la licencia, armas y municiones cuando se arreste al tenedor de la misma por la comisión de un delito grave o delito menos grave que implique violencia. A solicitud de la parte a quien se le ocupó el arma, hecha dentro de los quince (15) días laborables luego de la ocupación del arma, el Superintendente celebrará una vista administrativa en un término no mayor de cuarenta y cinco (45) días para sostener, revisar o modificar la ocupación del agente del orden público. El Superintendente deberá emitir su decisión en un plazo no mayor de cuarenta y cinco (45) días a partir de la celebración de dicha vista administrativa formal y de resultar favorable a la parte afectada la determinación de Superintendente, éste ordenará la devolución inmediata del arma o armas ocupadas. 25 LPRA ante sec. 456l.

**adjudicaciones y reconsideraciones establecidas en las secs. 2101 et seq. del Título 3, conocidas como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico".** 25 LPRA ante sec. 460f. (Negrillas suplidas).[8]

**D.**

Por otra parte, la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA sec. 601 nota *et seq.* (Ley Núm. 54-1989), confirió a los jueces del Tribunal de Primera Instancia la facultad de dictar medidas afirmativas de protección a favor de toda persona que así lo solicite por medio de un proceso civil sencillo y ágil. Exposición de Motivos de la Ley Núm. 54-1989 (1989 Leyes de Puerto Rico 223). De expedirse una Orden de Protección en contra de un poseedor de un arma de fuego al amparo de este estatuto, el Art. 2.1 de la Ley Núm. 54-1989, *supra*, 8 LPRA sec. 621, exige que se lleve a cabo el procedimiento siguiente:

[...]

**Cuando el tribunal así lo entienda o emita una orden de protección o de acecho, de inmediato el tribunal ordenará a la parte promovida entregar a la Policía de Puerto Rico para su custodia, cualquier arma de fuego perteneciente al promovido y sobre la cual se le haya expedido una licencia de tener o poseer o de portación, o de tiro al blanco, de caza o de cualquier tipo, según fuera el caso. La orden de entrega de cualquier arma de fuego, así como la**

---

[8] La Ley Núm. 170 del 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, 3 LPRA ante sec. 2101 nota, *et seq.* fue derogada y sustituida por la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9601 *et seq.*

**suspensión de cualquier tipo de licencia de armas de fuego se pondrá en [v]igor de forma compulsoria. Asimismo, al emitirse dicha orden por un tribunal, dicho dictamen tendrá el efecto de suspender la licencia de poseer o portar cualquier arma de fuego, incluyendo de cualquier tipo, tales como[,] pero sin limitarse a, tiro al blanco, de caza o de cualquier tipo, aun cuando forme parte del desempeño profesional del imputado. Dicha restricción se aplicará como mínimo por el mismo período de tiempo en que se extienda la orden. Cualquier violación a los términos de la orden de protección, que resulte en una convicción, conllevará la revocación permanente de cualquier tipo de licencia de armas que el promovido poseyere, y se procederá a la confiscación de las armas que le pertenezcan. El objetivo de este estatuto es eliminar la posibilidad de que el imputado pueda utilizar cualquier arma de fuego para causarle daño corporal, amenaza o intimidación al peticionario o a los miembros de su núcleo familiar.** (Negrillas suplidas).

Así pues, como es posible apreciar, una suspensión de una licencia de arma de fuego al amparo del Art. 2.1 de la Ley Núm. 54-1989, *supra*, durará, como mínimo, el periodo de tiempo que esté vigente la Orden de Protección emitida en contra del promovido. Ahora bien, de resultar este convicto por violar los términos dispuestos en la Orden de Protección, la citada disposición contempla que se revoque permanentemente la licencia de armas y se confisquen las armas de fuego ocupadas.

Con este marco jurídico en mente, pasemos a disponer de la presente controversia.

**III.**

En su recurso ante nos, el Ministerio Público alega que el foro apelativo intermedio erró al concluir que el Tribunal de Primera Instancia tenía la obligación de

ordenar a la Policía de Puerto Rico a devolver inmediatamente la licencia y el arma de fuego que le fueron incautadas al señor Morales Roldán. A su entender, dicha devolución no puede ser automática, puesto que debe llevarse a cabo un proceso evaluativo en donde el tribunal se asegure que no existen impedimentos para restituirle al recurrido los bienes que fueron ocupados.[9]

Por su parte, el señor Morales Roldán se opone. Entiende que sostener la postura del Estado conllevaría legislar por vía judicial un proceso que no fue contemplado por la Asamblea Legislativa al promulgarse la legislación que reglamenta el uso, posesión y portación de un arma de fuego. De igual forma, considera que se estaría regulando o limitando ilegalmente el derecho a poseer y portar armas, lo que contravendría la decisión emitida por el Tribunal Supremo Federal en *New York State Rifle & Pistol Assn., Inc. v. Bruen*, *supra*. Por último, dispone que conceder la petición en cuestión violentaría la presunción de

---

[9] A tales efectos, el Estado cita de manera persuasiva la decisión emitida por el Máximo Foro Judicial de New Jersey en el caso *Matter of J.W.D.*, 693 A.2d 92, 93 (N.J. 1997). En esa ocasión, dicho tribunal atendió la controversia de si un acusado tenía derecho a que le devolvieran las armas de fuego luego de que se desestimaran las denuncias de violencia doméstica instadas en su contra. Al analizar la intención legislativa del *Prevention of Domestic Violence Act of 1991*, N.J. Stat. Ann. secs. 2C:25-17-33 (West), el Tribunal dispuso que, aun cuando el estatuto ordenaba la devolución de las armas en ausencia de una decisión desfavorable al acusado, se podía observar también que el legislador tuvo la intención de prohibir la concesión de un arma de fuego a toda persona que representara una amenaza para la salud, la seguridad o el bienestar público. Por lo cual, el tribunal entendió que procedía devolver el caso al foro primario para que considerara si, a la luz de los testimonios y una vista a los efectos, el imputado reunía o no los requisitos para poseer y portar un arma de fuego en esa jurisdicción.

inocencia que le asiste, ante el hecho de que las acusaciones en su contra fueron desestimadas.

Estudiados con detenimiento los escritos presentados por ambas partes, así como las decisiones emitidas por los foros inferiores, entendemos que en efecto el proceder del Tribunal de Apelaciones fue errado. En casos como el de autos, en los que no media una decisión de absolución sobre los delitos imputados, el proceso de devolución de una licencia de armas no puede ser automático. A *contrario sensu*, corresponde que este tipo de petición sea objeto de un proceso evaluativo por parte de la Policía. Veamos.

En este caso, al señor Morales Roldán se le ocupó una licencia de armas y un arma de fuego luego de que el foro primario determinara causa probable para ordenar su arresto y expidiera una Orden de Protección Ex Parte al amparo de la Ley Núm. 54-1989, *supra*, a favor de su expareja. No obstante, llegado el momento de celebrar el juicio en su fondo, el Tribunal de Primera Instancia desestimó las acusaciones, por haberse incumplido los términos de juicio rápido.

Ante este cuadro procesal, el señor Morales Roldán solicitó al foro primario que ordenara a la Policía a devolverle la licencia y el arma de fuego que le fueron ocupadas, de conformidad a lo dispuesto en el Art. 2.08 de la Ley Núm. 168-2019, *supra.* Sin embargo, el Tribunal de Primera Instancia denegó acoger su postura, por entender que esa decisión la tomaría la Policía al amparo de la

facultad administrativa que le otorga nuestro ordenamiento. El Tribunal de Apelaciones, por su parte, revocó, pues consideró que la desestimación por violación a los términos de juicio rápido constituía un dictamen de no culpabilidad final y firme para efectos del Art. 2.08 de la Ley Núm. 168-2019, *supra*, y que, por tanto, el foro primario tenía el deber de atender la petición del señor Morales Roldán.

Al examinar el derecho aplicable, observamos que conforme al Art. 2.01 de la Ley Núm. 54-1989, *supra*, la suspensión de una licencia de armas será, como mínimo, por el tiempo de duración de la Orden de Protección emitida. Empero, del Estado comenzar un proceso penal en contra del imputado, el Art. 2.07 de la Ley Núm. 404-2000, *supra*, impone una suspensión provisional de la licencia de armas hasta tanto recaiga una determinación final en el proceso criminal. En ese aspecto, el Art. 2.07 de la Ley Núm. 404-2000, *supra*, expone que, **de resultar la acción penal con una decisión de no culpabilidad, final y firme, el tribunal ordenará la devolución de la licencia de armas de manera inmediata.** Sin embargo, de culminar el caso con un veredicto de culpabilidad, final y firme, el Superintendente de la Policía deberá revocar la licencia de armas permanentemente e incautar de manera final todas las armas y municiones.

Ahora bien, terminado el proceso penal con un resultado distinto a cualquiera de los escenarios

anteriores, el Art. 2.07 de la Ley Núm. 404-2000, *supra*, no dispone de un remedio o curso de acción a seguir para recuperar los bienes ocupados. Ante esta disyuntiva, el foro apelativo intermedio pretendió equiparar una desestimación de las acusaciones al amparo de la Regla 64(n)(4) de Procedimiento Criminal, *supra*, a un dictamen absolutorio para efectos del Art. 2.07 de la Ley Núm. 404-2000, *supra*. Sin embargo, no podemos avalar esa postura. Como bien es sabido, a diferencia de una determinación de no culpabilidad final y firme, una desestimación por incumplimiento de los términos de juicio rápido no impide, de ordinario, que el Ministerio Público inste otro procedimiento penal por el mismo delito grave que dio base al primer encausamiento. Véase: *Pueblo v. Pérez Pou*, 175 DPR 218 (2009); *Pueblo v. Camacho Delgado*, 175 DPR 1 (2008); *Pueblo v. Carrión*, 159 DPR 633 (2003).[10]

Además, resulta evidente que la intención de la Asamblea Legislativa fue limitar la facultad del tribunal para ordenar devolver una licencia de armas a instancias en las que la culpabilidad del imputado no hubiese sido probada más allá de toda duda razonable. Esto pues, para situaciones como las de autos, en las que no se contempló un proceso expreso a seguir para recuperar los bienes incautados, el mandato legislativo delega en el ente administrativo la facultad de tomar cualquier decisión al

---

[10] Véase, además, E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, San Juan, Ed. Situm, 2018, pág. 586.

respecto. Así lo establece claramente el Art. 7.07 de la Ley Núm. 404-2000, *supra*, el cual dispone que toda determinación que deba tomarse al amparo de esta legislación deberá tramitarse a través de los procesos administrativos de vistas informales, adjudicación y reconsideración que provee nuestro ordenamiento jurídico, salvo que otra cosa se hubiese expresamente dispuesto.[11]

Así las cosas, concluimos que, cuando se ocupa una licencia de armas y un arma de fuego por virtud de la facultad que otorga el Art. 2.07 de la Ley Núm. 404-2000, *supra*, y el proceso criminal no culmina con una decisión absolutoria final y firme, cualquier petición de devolución de estos bienes deberá ser referida a la Policía de Puerto Rico. De esa manera, el ente administrativo determinará la procedencia de la solicitud utilizando los procesos dispuestos en la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9601 *et seq*.

---

[11] Si bien es cierto que el Art. 7.07 de la Ley Núm. 404-2000, *supra*, se titula "Determinaciones administrativas; adjudicación; reconsideración", un análisis de su contenido, junto al hecho de que fue ubicado en el Capítulo 7 del estatuto —el cual contiene las "Disposiciones Finales" de la Ley—, permite concluir que su aplicación es de carácter general y no tan solo a procesos administrativos celebrados ante la Policía de Puerto Rico.

Por otra parte, debemos destacar que tanto el Art. 7.06 de la Ley Núm. 168-2019, *supra*, como el inciso (A)(25) del Capítulo 15 del Reglamento Núm. 9172 de 17 de marzo de 2020, conocido como Reglamento para la Administración de la Ley de Armas, contemplan que toda determinación que deba realizarse en virtud de la Ley Núm. 168-2019, *supra*, sea tramitada al amparo de los procedimientos administrativos dispuestos en la Ley Núm. 38-2017, *supra*, salvo que expresamente se hubiese contemplado otro trámite a seguir.

Mediante el mencionado curso de acción se logra preservar un justo balance de los intereses envueltos. Esto pues, por un lado, el señor Morales Roldán tendrá la posibilidad de recuperar su licencia de armas a través de un procedimiento cuyas salvaguardas del debido proceso de ley han sido ampliamente reconocidas en nuestro ordenamiento. Por el otro, la Policía de Puerto Rico, utilizando la pericia y autoridad que dispone para regular estos asuntos, evaluará si el recurrido satisface los criterios estatutarios para poseer un arma de fuego en nuestra jurisdicción.

Al llevar a cabo dicha encomienda, la agencia administrativa deberá emplear su conocimiento para determinar si los factores que dieron base a la remoción de la licencia de armas del señor Morales Roldán aún están presentes. Lo anterior, tomando en cuenta la probabilidad de que el recurrido pueda utilizar su arma para agredir, amenazar o intimidar a su expareja, su familia o a terceros. Después de todo, debemos recordar que, si bien el derecho a poseer y portar un arma de fuego está revestido de la más alta garantía legal provista en nuestro ordenamiento, el mismo no es absoluto. Por lo cual, ante situaciones de peligro a la vida o la propiedad de cualquier persona, la Policía de Puerto Rico, como ente encargado de la seguridad y prevención de la violencia, debe tomar las medidas preventivas necesarias para intentar evitar la ocurrencia de cualquier incidente

desgraciado o lamentable.[12] Véase: *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 49 (2018).

## IV

Por los fundamentos antes expuestos, revocamos la Sentencia emitida por el Tribunal de Apelaciones. En consecuencia, se procede a reinstalar la decisión dictada por el Tribunal de Primera Instancia para disponer del presente asunto.

Se dictará sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

---

[12] La decisión que hoy tomamos de ninguna forma debe ser interpretada en el sentido de que la Policía de Puerto Rico tiene potestad para revisar o revocar un dictamen del tribunal ordenando la suspensión o remoción de una licencia de armas. Por el contrario, la facultad de la agencia está centrada en determinar si la persona solicitante cumple o no con los criterios para poseer un arma de fuego y, de entenderlo procedente, conferir la licencia correspondiente. Lo anterior debido a que, como ente especializado, la Policía de Puerto Rico es quien está en mejor posición de evaluar una petición de tal naturaleza.

Por otra parte, debemos recordar que, si bien el foro administrativo es quien debe pasar juicio, en primera instancia, sobre una petición de devolución de una licencia de armas, los tribunales aún guardan jurisdicción para revisar cualquier dictamen final que se emita al respecto. Esto pues, el Art. 7.08 de la Ley Núm. 404-2000, *supra*, 25 LPRA ante sec. 460g, expresamente dispone que: "[u]na parte adversamente afectada por una orden o resolución final alcanzada en virtud de las disposiciones de este capítulo, que haya agotado todos los remedios administrativos, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones […]".

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

    v.

Víctor M. Morales Roldán

    Recurrido

CC-2023-0276

SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2024.

Por los fundamentos antes expuestos, revocamos la Sentencia emitida por el Tribunal de Apelaciones. En consecuencia, se procede a reinstalar la decisión dictada por el Tribunal de Primera Instancia para disponer del presente asunto.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres concurre con Opinión escrita. El Juez Asociado señor Colón Pérez concurre con Opinión escrita a la cual se une la Jueza Presidenta Oronoz Rodríguez.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

     Peticionario

       v.

                      CC-2023-0276

Víctor M. Morales Roldán

     Recurrido


Opinión concurrente emitida por el Juez Asociado señor MARTÍNEZ TORRES


En San Juan, Puerto Rico, a 29 de mayo de 2024.

Concurro con el curso de acción avalado por la Mayoría de este Tribunal. La derogada Ley de Armas de Puerto Rico, Ley Núm. 404-2000, 25 LPRA sec. 455, no le impone al tribunal un deber ministerial para ordenar la devolución inmediata de la licencia de armas, las armas y municiones cuando el caso se desestima por incumplir los términos de juicio rápido. Este deber ministerial de devolver automáticamente el arma solamente aplica luego de una absolución en los méritos. Por eso, estoy de acuerdo en que correspondía revocar la sentencia emitida por el Tribunal de Apelaciones.

Sin embargo, discrepo en cuanto a que en situaciones como la de autos, le corresponde al Negociado de la Policía de Puerto Rico evaluar una petición de devolución de un arma y su licencia. Considero que, si bien la devolución no procede de forma automática, el foro primario tiene el deber de ejercer su discreción para decidir si procede o no la devolución. En estos casos, es el foro que ordenó la suspensión provisional, a saber, el Tribunal de Primera Instancia, el único con autoridad para dirimir si procede dejar sin efecto su orden anterior y devolver el arma.

Por esa no ser la determinación a la que hoy arribó esta Curia, concurro respetuosamente.

I

El Sr. Víctor Morales Roldán (señor Morales Roldán) fue acusado por infracciones al Art. 3.1 de la Ley Núm. 54-1989, 8 LPRA sec. 631. El juicio para ventilar estas acusaciones quedó señalado para el 2 de noviembre de 2021. Sin embargo, debido a que el Ministerio Público no contaba con la prueba, el juicio tuvo que ser pospuesto en dos ocasiones. A raíz de estas dilaciones, el 18 de enero de 2022 el Tribunal desestimó el proceso penal al amparo de la Regla 64 (n) (4) de Procedimiento Criminal, 34 LPRA Ap. II, por violación de los términos de juicio rápido.

Como consecuencia de la desestimación, el señor Morales Roldán alegó que, ante su "exoneración" y conforme con el Art. 2.08 de la vigente Ley de Armas de Puerto Rico, Ley Núm. 168-2019, 25 LPRA sec. 462g, procedía que se

ordenara al Negociado de la Policía a devolverle la licencia de armas y el arma de fuego que se le ocuparon al comienzo del proceso criminal en su contra. El foro primario rechazó su petición y concluyó que "esa determinación la tomaría la Policía de Puerto Rico dentro de su facultad administrativa".

En desacuerdo, el señor Morales Roldán solicitó reconsideración. Aseveró que la Ley Núm. 168-2019, supra, y el Reglamento Núm. 9172 de 17 de marzo de 2020, conocido como Reglamento para la Administración de la Ley de Armas, no contemplan un procedimiento administrativo para solicitar la devolución de una licencia de armas incautadas como parte del proceso criminal en su contra, luego de este haber culminado. En vista de ello, esgrimió que era el foro judicial quien tenía el deber de dilucidar y atender su solicitud.

Tras denegarse la reconsideración, el señor Morales Roldán presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. El foro apelativo intermedio revocó al foro primario bajo el raciocinio de que el Art. 2.08 de la Ley Núm. 168-2019, supra, era claro al disponer que los tribunales tienen un deber ministerial de ordenar la devolución inmediata de un arma de fuego una vez el acusado es encontrado no culpable. Concluyó que dicha disposición debía ser aplicada en este caso a pesar de que no existía una determinación absolutoria final y firme.

En desacuerdo con este proceder, el Procurador General del Puerto Rico recurrió ante nosotros mediante recurso de *certiorari*. Planteó que el foro apelativo intermedio se equivocó al aplicar la disposición contenida en el Art. 2.08 de la Ley Núm. 168-2019, supra, al caso de autos. Señaló que no está en desacuerdo con que el arma sea entregada al señor Morales Roldán. Sin embargo, enfatizó que discrepa de la decisión del tribunal intermedio a los fines de que el foro primario tiene un deber ministerial de devolver el arma. Según el Procurador General, el lenguaje de la Ley Núm. 404-2000, supra y de la Ley Núm. 54-1989, supra, demuestra que el tribunal tiene la discreción y es el foro adecuado para determinar si procede o no la devolución del arma.

Tras evaluar el asunto, estimo que el Procurador General tiene razón.

II

**A. *Aplicabilidad de la Ley de Armas de Puerto Rico Ley Núm. 168-2019.***

En primer lugar, es importante señalar que, como correctamente explica la Opinión Mayoritaria, en vista de que la licencia de armas del señor Morales Roldán fue expedida el 17 de julio de 2018, durante la vigencia de la Ley Núm. 404-2000, supra, su petición debía fundamentarse con arreglo a este estatuto. Véase, Art. 7.24 de la Ley Núm. 168-2019, supra.

Ahora bien, la derogada Ley Núm. 404-2000 supra, aplicable a la controversia de autos, contiene una disposición similar a lo establecido en el Art. 2.08 de la Ley 168-2019, 25 LPRA sec. 462g. En lo pertinente, el Art. 2.07 de la Ley Núm. 404-2000, 25 LPRA sec. 456f, establece que "[d]e resultar el acusado con una determinación de no culpabilidad, final y firme, el juez ordenará la inmediata devolución de su licencia de armas y de las armas y municiones".

**B. Desestimación al amparo de la Regla 64(N)(4) de Procedimiento Criminal y la absolución en los méritos.**

Es preciso aclarar que, aunque el señor Morales Roldán hubiese fundamentado su solicitud en el precitado Art. 2.07 de la Ley Núm. 404-2000, supra, el resultado hubiera sido el mismo. Es decir, no procedía la inmediata devolución del arma y la licencia. Esto es así debido a que una desestimación por haber incumplido con los términos de juicio rápido no equivale a una determinación de no culpabilidad final y firme. Pueblo v. Carrión, 159 DPR 633, 644 (2003). Hace algún tiempo ya habíamos expresado que "el hecho de que [una desestimación] sea "sin perjuicio" no opera en contra de esta conclusión, ya que lo que significa es que el imputado no está "absuelto" para propósitos de la protección constitucional contra la doble exposición". Íd.

Sobre este particular, el Profesor Ernesto L. Chiesa Aponte nos dice que "una desestimación de la acusación por

cualquiera de los fundamentos de derecho que no sea una determinación de no culpable (absolución en los méritos) no impide ulteriores procedimientos, en el tribunal de origen ni en tribunales apelativos". E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa*, Ediciones Situm, San Juan, 2017, pág. 586. Con este lenguaje, el Profesor Chiesa aclara que lo único que equivale a una absolución en los méritos es una determinación final y firme realizada por un juzgador de hechos.

En esta misma línea, el Profesor Chiesa añade que "[p]or supuesto, si el defecto que provoca la desestimación es insubsanable habría impedimento para un nuevo proceso una vez la resolución de desestimación advenga firme; tal sería el caso, para dar un ejemplo, de una desestimación por prescripción de la acción penal". Íd. De igual forma, la desestimación de una causa tiene que entenderse como un evento que da por terminada la acción presentada ante los tribunales por el Ministerio Público. Íd. Bajo este crisol doctrinario, queda claro que el foro apelativo intermedio se equivocó al concluir que el foro primario tenía un deber ministerial de devolverle la licencia y el arma al señor Morales Roldán.

**C. *Ley para la Prevención e Intervención con la Violencia Doméstica, Ley 54-1989.***

Conviene recordar que el señor Morales Roldán fue acusado por haber infringido el Art. 3.1 de la Ley Núm. 54-1989, supra, 8 LPRA sec. 631. Este artículo, en síntesis, establece que "toda persona que empleare fuerza física o violencia psicológica, en la persona de su cónyuge, excónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, incurrirá en delito grave". Íd. Como el señor Morales Roldán fue acusado por un delito grave tipificado en ley especial que fue desestimado debido al incumplimiento con los términos de juicio rápido, el Ministerio Público puede volver a radicar cargos por los mismos hechos mientras el delito no haya prescrito. Véase, Art. 87 del Código Penal de 2012, 33 LPRA sec. 5132.

Además, es importante mencionar que el Art. 2.1 de la Ley Núm. 54-1989, supra, establece que cuando el tribunal emita una orden de protección o de acecho, de inmediato ordenará a la parte promovida entregar a la Policía de Puerto Rico cualquier arma de fuego. Sobre el propósito de esta disposición, el precitado artículo añade que: "el objetivo de este estatuto es eliminar la posibilidad de que el imputado pueda utilizar cualquier arma de fuego para causar daño corporal, amenaza o intimidación al peticionario o a los miembros de su núcleo familiar". Íd.

**D. El efecto de una desestimación: el fin de un proceso criminal.**

El Art. 2.07 de la Ley Núm. 404-2000, 25 LPRA ant. sec. 456f, objeto de la controversia ante nuestra consideración, establece que:

> Luego de una determinación de causa probable para el arresto de cualquier persona a la cual se le haya otorgado una licencia de armas, por la comisión de cualquiera de los delitos especificados en el Artículo 2.11 o de violaciones a las disposiciones de esta Ley, **el tribunal suspenderá provisionalmente la licencia hasta la determinación final del procedimiento criminal**. (Énfasis nuestro).

De una lectura de este artículo, salta a la vista la frase "hasta la determinación final del procedimiento criminal" pues precisamente, el proceso criminal del señor Morales Roldán ya ha llegado a su final. En Pueblo v. Camacho Delgado, 175 DPR 1 (2008), pautamos que según la Regla 67 de Procedimiento Criminal, supra, la desestimación de un caso grave por violación de los términos prescritos en la Regla 64(n) no constituye un impedimento para el inicio de otro proceso por los mismos hechos. Particularmente enfatizamos que, en ausencia de circunstancias que lo prohíban, el Ministerio Público tiene la facultad de presentar nuevamente aquellos cargos. En aquel momento expresamos que

> "luego de una desestimación por violentar el término consignado en la Regla 64(n)(5) de Procedimiento Criminal, supra, el Estado tiene tres opciones: (1) recurrir de dicha determinación ante el Tribunal de Apelaciones; (2) aceptar el dictamen del foro de instancia y, de tratarse de un caso por delito grave, iniciar otro proceso con la presentación del proyecto de denuncia correspondiente para una nueva determinación de causa probable para el arresto, o (3) negarse a procesar al ciudadano, de acuerdo

con la facultad discrecional que le reconoce nuestro ordenamiento penal al Ministerio Público. Íd., pág. 21.

Nuestro lenguaje en Pueblo v. Camacho Delgado, supra, no deja margen para interpretar que la nueva presentación de los cargos constituía la continuación del proceso inicial. Tanto es así que, un año más tarde, en Pueblo v. Pérez Pou, 175 DPR 218 (2009) establecimos que, "según lo resuelto en Pueblo v. Camacho Delgado, 175 DPR 1 (2008), **una determinación judicial que declare "con lugar" una moción de desestimación pone fin a la acción penal".**

Conviene también recordar los hechos del caso Pueblo v. Carrión, supra, en donde el acusado argumentaba que la demora entre la primera desestimación del caso por incumplimiento con los términos de juicio rápido y la segunda presentación de los cargos violentó su debido proceso de ley pues en este periodo se encontraba "sujeto a responder". Nuestra conclusión ante tal planteamiento fue:

> [D]ebemos concluir que, durante todo el primer proceso, desde el arresto hasta la solicitud de desestimación, el peticionario estuvo "sujeto a responder". Dicha condición, sin embargo, cambió con la desestimación de la denuncia. **Esto es así debido a que la desestimación, aunque sin perjuicio, significó la caída de los cargos que pendían en su contra.** (Énfasis nuestro). Tan es así que el Ministerio Público tuvo que presentar cargos nuevamente por los mismos hechos. A esa nueva denuncia se le asignó un nuevo número de caso y, por haber solicitado el peticionario que se le cancelara la fianza anterior, se le fijó una nueva. Es con esa nueva presentación de cargos que el peticionario advino nuevamente a estar expuesto a convicción

y, por ende, "sujeto a responder". <u>Pueblo v.</u>
<u>Carrión</u>, <u>supra</u>, pág. 643.

> **Por lo tanto, no nos persuade el argumento
> del peticionario, en el sentido de que una
> primera desestimación sería sólo una incidencia
> procesal que no interrumpe el carácter continuo
> del procedimiento.** (Énfasis nuestro). A lo único
> que estuvo sujeto el peticionario durante ese
> período fue a que, como en efecto ocurrió, el
> Ministerio Público decidiera reprocesarlo. **Por lo
> que, para efectos prácticos, el peticionario se
> encontraba en la misma situación procesal que un
> individuo que sabe que lo están investigando,
> pero que aún no se le han sometido cargos
> formalmente.** <u>Íd</u>. (Énfasis nuestro).

Al analizar lo discutido en los precitados casos en
conjunto con en el lenguaje del Art. 2.07 de la Ley Núm.
404-2000, <u>supra</u>, no existe duda de que el proceso criminal
en contra del señor Morales Roldán culminó. Por tanto, si
bien no estamos ante una absolución en los méritos y no
existe un deber ministerial de devolver el arma y la
licencia, el foro primario sí tiene el deber de dirimir,
bajo su prudencia, si procede o no la devolución.
Considero que ese resultado es el más apropiado pues en
este momento no existe procedimiento criminal pendiente. Lo
único que existe en contra del señor Morales Roldán es la
posibilidad de que el Ministerio Público le presente
nuevamente otra acusación bajo los mismos cargos. Ante este
escenario, procede que el foro primario pase juicio sobre
su propia determinación para auscultar si el solicitante
posee algún riesgo de peligrosidad. De esta manera, el foro
primario estará en una mejor posición para determinar si
devuelve o no la licencia y el arma en cuestión.

**E. *Revisión judicial de los procesos administrativos.***

La Opinión mayoritaria sustenta su conclusión de remitir el asunto al foro administrativo en el lenguaje del Art. 7.07 de la Ley Núm. 404-2000, <u>supra</u>, 25 LPRA sec. 460f, que dispone que "[s]alvo que otra cosa se disponga expresamente, todas las determinaciones que tengan que realizarse en virtud de esta Ley se regirán por las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". Ahora bien, el propio título del artículo: *"Determinaciones Administrativas; Adjudicación; Reconsideración"* nos demuestra que esta disposición aplica únicamente a las determinaciones administrativas. Por lo tanto, debido a que la suspensión del arma del señor Morales Roldán **no fue por una orden administrativa, sino por una judicial**, dicho artículo no puede ser utilizado para disponer de la controversia ante nuestra consideración.

Aunque del expediente no surge la orden judicial que decretó la suspensión de la licencia de armas del señor Morales Roldán, el Ministerio Público nos menciona que "no existe controversia sobre que, en efecto, el arma fue ocupada como parte de los incidentes de violencia doméstica en este caso". Véase Petición de *certiorari* pág. 11 nota 23. Por tanto, no resulta correcto y mucho menos práctico utilizar el lenguaje del Art. 7.07 de la Ley Núm. 404-2000,

supra, para remitir la orden judicial al foro administrativo.

**F. Debido Proceso de Ley.**

La Opinión mayoritaria considera que el debido proceso de ley del señor Morales Roldán queda adecuadamente protegido porque la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 del 12 de agosto de 1988, 25 LPRA sec. 9601 *et. seq.*, le reconoce un derecho a revisión judicial. **Sin embargo, en este ejercicio, lo que la Mayoría propone es delegarle indirectamente a una agencia administrativa la revisión de una orden judicial.** Soy consciente de que el Negociado de la Policía cuenta con el *expertise* para realizar una mejor determinación sobre a quién se le puede o no conceder una licencia de armas. Sin embargo, la mayoría olvida que en este caso ya hubo una determinación realizada por el Comisionado de la Policía que, en su día, le otorgó al señor Morales Roldán la licencia de armas. Fue luego de las acusaciones por violencia doméstica que el tribunal, cumpliendo el mandato de la Ley Núm. 404-2000, supra, intervino con la determinación del Negociado y le suspendió al señor Morales Roldán la licencia de armas. En resumidas cuentas, al remitir nuevamente el asunto al Negociado de la Policía, la Opinión mayoritaria convierte al Negociado de la Policía en el foro con jurisdicción para revisar una orden judicial. **Este proceder resulta peligroso pues**

**establece como precedente que una agencia administrativa puede revisar y revocar una determinación judicial.**

A tenor, debemos recordar nuestros pronunciamientos en Rolón Martínez v. Caldero López, 201 DPR 26 (2018). Allí establecimos que la Policía y el Superintendente (hoy Comisionado) tienen la facultad en ley para revocar las licencias de armas cuando una persona posea un historial de violencia. Si bien esta pudiera ser la situación del señor Morales Roldán, es necesario que antes de que el Negociado de la Policía intervenga, el foro judicial tome una determinación. Según nuestra postura, le corresponde exclusivamente al foro que ordenó la suspensión decidir si procede o no la devolución de la licencia y el arma del señor Morales Roldán.

**G. *Deber ministerial y facultad discrecional.***

Estoy convencido de que, aunque no existe un **deber ministerial** por parte del foro judicial para entregar el arma y la licencia del señor Morales Roldán, el foro primario sí tiene el deber de evaluar la petición y tiene **discreción** para devolverla. Hace algún tiempo explicamos que existe un deber ministerial cuando "la ley prescribe y define un deber que tiene que ser cumplido de forma tal que no le permite el ejercicio de la discreción o del juicio sobre si cumple o cómo cumple con ese deber impuesto". Partido Popular v. Junta de Elecciones, 62 DPR 745, 749 (1944). Por lo tanto, si la ley no establece un deber

ministerial para entregar un arma luego de una desestimación, y ni siquiera lo contempla, no es irrazonable concluir que lo dejó a la discreción del foro que ordenó la suspensión de la licencia. Por esta razón considero que no procede delegarle al Negociado de la Policía la facultad de determinar si corresponde o no la devolución de un arma de fuego, después que un tribunal ordena su suspensión.

## III

En resumen, el foro primario no tiene el deber ministerial de devolverle el arma al señor Morales Roldán pues este no fue absuelto en los méritos. Sin embargo, el propio tribunal que ordenó la suspensión de la licencia tiene el deber de considerar la petición y ponderar si procede o no la devolución. Con este proceder, se salvaguardan adecuadamente los derechos aquí en conflicto. Mas allá de todos los fundamentos en derecho que he esbozado a través de esta concurrencia, el sentido práctico también me lleva a esta conclusión. Definitivamente, el propio tribunal que atendió el caso criminal que dio paso a la suspensión de la licencia y la entrega del arma está en mejor posición que un foro administrativo para intervenir con el derecho de una persona a poseer armas y para tomar aquellas medidas dirigidas a salvaguardar la seguridad de las víctimas de violencia doméstica.

A su vez, debo mencionar que el curso avalado por la mayoría me deja serias preocupaciones en cuanto las

posibles violaciones al debido proceso de ley que puede enfrentar el señor Morales Roldán al momento de solicitarle al Negociado de la Policía la devolución del arma y su licencia. El Sr. Víctor Morales Roldán no tiene un caso criminal pendiente pues las acusaciones en su contra fueron desestimadas por un tribunal. Al señor Morales Roldán, le cobija el derecho a la presunción de inocencia. Debido a lo anterior, advierto que un proceso criminal que fue desestimado y una orden de protección que ya venció no pueden utilizarse como pretexto para interferir con su derecho constitucional a la portación de armas. Véase Emda. II, Const. EE. UU., LPRA, Tomo 1. Por lo tanto, la determinación del Negociado de la Policía no puede estar atada a la posibilidad de que el Ministerio Público vuelva a radicar los cargos. Reitero que, para todos los efectos, ese proceso criminal inicial ya no existe. Por consiguiente, la determinación no puede estar fundamentada en un caso judicial que se desestimó.

Finalmente, estimo que el Art. 2.1 de la Ley Núm. 54-1989, supra, es claro al mencionar que el propósito de ordenar al promovido la entrega del arma es proteger al peticionario. Por lo tanto, el curso de acción propuesto por la mayoría aleja a los tribunales de cumplir con su deber de proteger a las víctimas de violencia doméstica. Estimo que en casos como el de autos resulta necesario que, sin pretender delegarla a otros foros, realicemos nuestra función adjudicativa y cumplamos nuestro llamado de

impartir justicia. A fin de cuentas, de eso se trata la función judicial. Véase, Preámbulo de los Cánones de Ética Judicial, 4 LPRA Ap. IX.

IV

Por todo lo anterior, concurro respetuosamente. Hubiese determinado que le corresponde al foro judicial auscultar si procede la devolución del arma y la licencia del señor Morales Roldán. A pesar de que el proceso criminal culminó, la orden judicial que dispuso la suspensión de la licencia del señor Morales Roldán es independiente y continúa vigente. Por tanto, el tribunal, a solicitud del señor Morales Roldán tiene el deber de determinar bajo su discreción, si procede o no la devolución de la licencia y el arma.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.                      CC-2023-0276    *Certiorari*

Víctor M. Morales Roldán

    Recurrido

Opinión concurrente emitida por el Juez Asociado señor COLÓN PÉREZ a la que se une la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico a 29 de mayo de 2024.

En el presente caso, uno en el cual se acusa y se procesa criminalmente a una persona por violar el Artículo 3.1 de la Ley para la Prevención e Intervención con la Violencia Doméstica, *infra*, nos corresponde determinar si, ante la desestimación del caso criminal por violación a los términos de juicio rápido contemplados en la Regla 64(n) de las de Procedimiento Criminal, *infra*, corresponde la devolución inmediata de la licencia y las armas de fuego que le fueron ocupadas a ésta, de conformidad con lo dispuesto en los Artículos 2.1 de la ya mencionada ley y 2.07 de la Ley de Armas de Puerto Rico, *infra*.

Adelantamos que, luego de haber examinado detenida y cuidadosamente los hechos que dieron margen al presente proceso penal, así como el derecho aplicable,-- al igual que se hace en la Opinión que hoy emite este Tribunal --, revocaríamos la determinación tomada por el Tribunal de Apelaciones en el caso de marras, mediante la cual se ordenó la devolución inmediata de la licencia y armas de fuego ocupadas al Sr. Víctor Morales Roldán. Ello es lo correcto.

Ahora bien, -- distinto al acercamiento que se hace en el escrito de la Mayoría, en el cual se concluye que la devolución del arma de fuego será una determinación que le corresponderá exclusivamente a la Policía de Puerto Rico en el ejercicio de su facultad administrativa --, somos de la opinión que, en casos como estos, lo correcto hubiese sido que, como paso previo a devolver el arma de fuego a la persona acusada de delito, el Tribunal de Primera Instancia refiriese el asunto a la Policía de Puerto Rico para que dicha agencia del orden público, -- como ente administrativo especializado --, determinase si esta última cuenta, o no, con la aptitud necesaria en ley para poseer y portar un arma de fuego, y rindiese un informe al Tribunal de Primera Instancia a tales fines; y que, luego de ello, basándose en la recomendación hecha por la referida agencia, fuese el foro primario quien evaluase y resolviese, de forma definitiva, la solicitud de devolución de arma de fuego.

A nuestro juicio, el procedimiento que proponemos para la devolución de armas de fuego en casos como el de autos,

es el que mejor armonizaría los importantes intereses que aquí yacen en pugna. Por un lado, y distinto a lo que hoy pauta una Mayoría de este Tribunal, brindaría coherencia procesal al facultar al propio Tribunal de Primera Instancia que ordena la incautación de la licencia y arma de fuego a realizar su devolución. Igualmente, y por otro lado, integraría la participación experta de la Policía de Puerto Rico quien es la entidad administrativa con la pericia necesaria para resolver estos asuntos, y cuyo insumo guiaría la determinación que en su día tomase el foro judicial correspondiente.

Por ello, concurrimos. Nos explicamos.

I.

La serie de eventos que dieron paso al caso que hoy pende ante nuestra consideración, tuvo su génesis allá para el año 2021. El 27 de julio de dicho año, el Ministerio Público presentó contra el señor Víctor M. Morales Roldán (en adelante, "señor Morales Roldán") dos denuncias por infracción al Artículo 3.1 de la Ley para la Prevención e Intervención con la Violencia Doméstica, *infra*.

En síntesis, en las referidas denuncias el Estado alegó que el 25 de julio de 2021 el señor Morales Roldán agredió de manera violenta a su entonces pareja consensual. Específicamente, se aseveró que la referida agresión consistió en el señor Morales Roldán haber abofeteado a su expareja, así como lanzarla al suelo y agredirla con los puños en varias partes del cuerpo.

Celebrada la vista de causa para arresto el mismo 27 de julio de 2021, el Tribunal de Primera Instancia, Sala de Fajardo, encontró causa probable para arresto contra el señor Morales Roldán por todos los delitos imputados. Asimismo, en consideración a la naturaleza del caso, el foro primario expidió una orden de protección a favor de la presunta víctima de la agresión y en contra del imputado Morales Roldán.

**Cónsono con lo anterior, y en virtud del mandato expreso que contiene el Artículo 2.07 de la Ley de Armas de Puerto Rico (en adelante, "Ley de Armas de 2000"),** *infra*, **el Tribunal de Primera Instancia requirió al señor Morales Roldán que hiciera entrega a la Policía de Puerto Rico de cualquier arma de fuego para la cual éste poseyera licencia, así como la licencia misma, ya fuera ésta de portación o posesión. Este último así lo hizo.**

Entregadas las armas de fuego y la licencia a la autoridad competente, el 15 de septiembre de 2021 se celebró la vista preliminar contra el señor Morales Roldán. Culminada la misma, el foro primario encontró causa probable para acusar por todos los delitos imputados. En consecuencia, la orden de protección expedida a favor de la perjudicada se extendió hasta el día 2 de noviembre de 2021, fecha en la que quedó pautada la celebración del juicio.

Llegado el día en que se había pautado el inicio del juicio, el mismo fue reseñalado para el 23 de noviembre de

2021. De igual manera, la ya mencionada orden de protección fue extendida hasta dicha fecha.

Posteriormente, y luego de varios incidentes procesales no necesarios aquí pormenorizar, el 18 de enero de 2022 el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual desestimó los cargos que pesaban contra el señor Morales Roldán, ello por violación a los términos de juicio rápido contemplados en la Regla 64(n) de las de Procedimiento Criminal, 34 LPRA Ap. II.

**Así las cosas, el 2 de noviembre de 2022 el señor Morales Roldán presentó ante el foro primario una *Moción en solicitud de orden*. En dicho escrito, éste arguyó que debido a que el caso en su contra había sido desestimado, dicha desestimación constituía una "exoneración" por lo cual, en virtud del Artículo 2.08 de la Ley de Armas de Puerto Rico de 2020, *infra*, correspondía que el Estado le devolviera su licencia de armas y el arma de fuego ocupadas.**

**En respuesta a la solicitud del señor Morales Roldán, el Tribunal de Primera Instancia, emitió una *Orden* el 7 de noviembre de 2022 mediante la cual declaró *no ha lugar* la referida solicitud. En particular, el foro primario dictaminó que la determinación sobre la devolución de la licencia y el arma de fuego era una que le correspondería tomar a la Policía de Puerto Rico dentro de su facultad administrativa.**

Acto seguido, el 28 de noviembre de 2022 el Tribunal de Primera Instancia denegó una *Moción en solicitud de reconsideración* que fuera presentada por el señor Morales

Roldán. Esas determinaciones fueron oportunamente notificadas a todas las partes en el presente caso.

Inconforme con la decisión del foro primario, el 27 de diciembre de 2022 el señor Morales Roldán acudió ante el Tribunal de Apelaciones mediante un recurso de *certiorari*. En dicho escrito, alegó que el Tribunal de Primera Instancia había errado en su proceder toda vez que, conforme al Artículo 2.08 de la Ley de Armas de Puerto Rico de 2020, *infra*, correspondía la devolución, sin más, de la licencia de armas y el arma que le habían sido ocupadas. Esto, debido a que, según su criterio, una desestimación bajo la Regla 64(n) de las de Procedimiento Criminal, *supra*, suponía una determinación de no culpabilidad por lo cual, según el texto de la ley, el foro primario estaba ministerialmente obligado a devolver inmediatamente las armas ocupadas.

Por su parte, y en oposición, la Oficina del Procurador General compareció ante el foro apelativo intermedio mediante un *Escrito en cumplimiento de orden*. En síntesis, el Procurador General arguyó que, en virtud del texto claro de la ley, -- tanto la Ley de Armas de 2000, *infra*, como la Ley de Armas de Puerto Rico de 2020, *infra* --, la devolución inmediata de la licencia y armas no procedía puesto que en este caso no hubo una determinación de no culpabilidad, sino que se trató de una desestimación por violación a los términos de juicio rápido. A esos fines, la Oficina del Procurador General sostuvo que lo que correspondía era que el Tribunal de Primera Instancia evaluara la solicitud de

devolución del arma de fuego y licencia de armas, y tomara su decisión.

**Así las cosas, el 28 de febrero de 2023 el Tribunal de Apelaciones emitió una *Sentencia* mediante la cual revocó la determinación dictada por el foro primario. En particular, concluyó que, habiendo obtenido el señor Morales Roldán una determinación de no culpabilidad final y firme, el Tribunal de Primera Instancia estaba obligado a ordenar a la Policía de Puerto Rico la devolución inmediata, y sin ulterior consideración, de la licencia y el arma de fuego ocupadas.** Presentada una *Solicitud de reconsideración* por parte del Ministerio Público, el foro apelativo intermedio proveyó *no ha lugar* a la misma.

Ante la determinación del Tribunal de Apelaciones, el pasado 1 de mayo de 2023 el Pueblo de Puerto Rico compareció ante nos mediante una *Petición de certiorari*. En su escrito, el Estado señala que el foro apelativo intermedio erró al ordenar a la Policía de Puerto Rico devolver inmediata y automáticamente el arma de fuego al señor Morales Roldán, a pesar de éste no haber obtenido una determinación de no culpabilidad, final y firme, como expresamente requiere la Ley de Armas de Puerto Rico, *infra*. A esos fines, nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Apelaciones y que, en consecuencia, devolvamos el caso al foro primario para que se continúen los procedimientos pertinentes a la devolución de la licencia y arma de fuego ocupadas.

Por su parte, el señor Morales Roldán compareció mediante un *Alegato de la parte recurrida*. En su escrito, y de manera similar a como lo hizo en los foros *a quo*, alega que tras la desestimación de los cargos al amparo de la Regla 64 (n) de las de Procedimiento Criminal, *supra*, correspondía la devolución inmediata de la licencia y arma de fuego ocupadas. Ello debido a que, proceder como el Ministerio Público propone, constituiría un acto de legislación judicial y menoscabaría la presunción de inocencia del señor Morales Roldán. De igual manera, la defensa del señor Morales Roldán reafirma que la desestimación de los cargos presentados en su contra es equivalente a una absolución puesto que ambos escenarios suponen la finalización del proceso criminal en cuestión.

Por último, el señor Morales Roldán expresa que tanto la continuación de la ocupación de las armas, así como el proceso que propone el Ministerio Público como condición a la devolución de las mismas, constituyen una violación constitucional al derecho fundamental a la posesión y portación de armas de fuego contenido en la Segunda Enmienda de la Constitución de los Estados Unidos. A esos fines, el señor Morales Roldán hace referencia a la reciente decisión emitida por el Tribunal Supremo de los Estados Unidos en *New York State Rifle and Pistol Association v. Bruen*, *infra*, y aduce que no existe una práctica histórica similar que

justifique la pretensión del Ministerio Público, por lo que la propuesta de dicha entidad sería inconstitucional.[1]

Examinado el trámite fáctico y procesal, pasemos, pues, a discutir el derecho aplicable a la controversia ante nuestra consideración.

## II.

Como es sabido, la Constitución de los Estados Unidos de América, en su Segunda Enmienda, reconoce expresamente "el derecho del pueblo a tener y portar armas". Enmda. II, Const. EE. UU., LPRA, Tomo 1, ed. 2023, pág. 186. Dicho derecho, según ha sido reconocido por la jurisprudencia federal, es un derecho individual y fundamental bajo el ordenamiento constitucional federal norteamericano, *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2156 (2022); *McDonald v. City of Chicago III*, 561 US 742, 778 (2010); *District of Columbia v. Heller*, 554 US 570, 595 (2008), y se hizo extensivo a todos los estados y territorios norteamericanos en virtud de la Decimocuarta Enmienda federal en *McDonald v. City of Chicago III*, *supra*, pág. 791.

Por lo tanto, aunque la Constitución del Estado Libre Asociado de Puerto Rico no reconoce expresamente el derecho de los ciudadanos a poseer y portar armas, el referido derecho federal aplica en Puerto Rico con toda su fuerza.

---

[1] De igual manera, y como fuente persuasiva, el señor Morales Roldán nos señala que el pasado año el 5to Circuito del Tribunal de Apelaciones federal resolvió que la ley federal prohibiendo la posesión de armas de fuego por personas bajo una orden de protección expedida por actos constitutivos de violencia doméstica es inconstitucional. *US v. Rahimi*, 61 F. 4th 443 (5to Circuito, 2023). Cabe señalar que dicho caso pende actualmente ante la consideración del Tribunal Supremo de los Estados Unidos.

*Pueblo v. Rodríguez López et al.*, 210 DPR 752, 766 (2022). Esto, de conformidad con la doctrina de la incorporación selectiva. *Véase*, *McDonald v. City of Chicago III*, *supra*, págs. 763-766; *Malloy v. Hogan*, 378 US 1, 5-6, 10 (1964); *Gideon v. Wainwright*, 372 US 335, 341-342 (1962).

**Ahora bien, dicho ello, es preciso señalar que, si bien el Alto Foro Judicial federal ha elevado el derecho a poseer y portar armas a uno fundamental, de igual forma ha reconocido expresamente que la referida garantía no es absoluta ni ilimitada.** *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, pág. 2128; *District of Columbia v. Heller*, *supra*, pág.626. Véanse, además, *Pueblo v. Rodríguez López et al.*, *supra*, pág. 768; y *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 37 (2018). A esos fines, recientemente, en *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, el Tribunal Supremo de los Estados Unidos pautó el examen que habrá de seguirse cuando se examinen, bajo el crisol de la Segunda Enmienda, la constitucionalidad de leyes que regulan la posesión y portación de armas de fuego. Consecuentemente, este Tribunal así lo adoptó en nuestra jurisdicción en *Pueblo v. Rodríguez López et al.*, *supra*.

En esencia, y de conformidad con lo resuelto en los precitados casos, el examen constitucional aplicable a las regulaciones sobre la posesión y portación de armas es el siguiente:

(1) Cuando la conducta de un individuo esté protegida por el texto de la Segunda Enmienda, se

presumirá que la Constitución protege tal conducta y, solo entonces, (2) el gobierno o estado deberá justificar la regulación o limitación del derecho consagrado en la mencionada enmienda constitucional, tras demostrar que la referida regulación o limitación es consistente con la tradición histórica de regulación de armas de fuego en la Nación [norteamericana]. *Íd.*, pág. 775 (citando a *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, pág. 2126).

En otras palabras, al considerar un estatuto a la luz de este examen, el estado que aprobó la legislación que está siendo objeto de escrutinio judicial "deberá establecer que existe un entendido histórico que hace permisible la regulación o limitación que se impugna". *Íd.*, pág. 776. Es decir, deberá "evaluarse si la regulación moderna e históricamente [similar impone] una carga comparable sobre el derecho constitucional a poseer y portar armas para defenderse, y si esa carga se ha justificado de manera semejante" a lo largo del tiempo. *Íd*.

Cual discutido, si bien en el caso de *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, pág. 2138, el Alto Foro Judicial federal invalidó la ley impugnada, dicho tribunal también reconoció que, tradicionalmente, a través de la historia angloamericana el derecho a poseer y portar armas ha estado sujeto a válidas y bien definidas restricciones gubernamentales sobre la forma y manera en las que se puede ejercer el derecho constitucional en cuestión. A esos efectos, el Tribunal Supremo de los Estados Unidos dejó claro que nada de lo resuelto en el referido caso debía interpretarse como sugerente de la posible

inconstitucionalidad de los mecanismos de otorgamiento de licencias para poseer y portar armas que tienen la mayoría de los estados de la nación norteamericana. *Íd.*, pág. 2138 esc.9.[2]

De esta forma, se mantuvo el raciocinio expresado por el Tribunal Supremo de los Estados Unidos en *District of Columbia v. Heller*, *supra*, págs. 626-627, a los efectos de que nada en dicha opinión debería poner en duda la validez constitucional de las diversas y perdurables prohibiciones estatales de posesión de armas respecto a los incapaces mentales y a los criminales, así como a las regulaciones sobre los lugares en donde se podrán usar y vender las mismas. ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms").

Cónsono con ello, y al abordar una controversia de similar naturaleza, este Tribunal en *Pueblo v. Rodríguez López*, *supra*, pág. 782, resolvió que el Artículo 5.04 de la Ley de Armas de Puerto Rico de 2000, 25 LPRA ant. sec. 458c, que penalizaba la portación y uso de armas de fuego sin la debida licencia, era constitucionalmente válido a la luz de

---

[2] En particular, el alto foro federal expresó que "to be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit]'". *New York State Rifle & Pistol Association, Inc. v. Bruen*, *supra*, pág. 2138.

la jurisprudencia federal ya reseñada. En ese sentido, concluimos que nuestra regulación estatutaria del derecho a poseer y portar armas fuego era una práctica consistente con la tradición histórica de regular armas de fuego en la nación norteamericana. *Íd*. Siendo el propósito fundamental de la misma perseguir "la política pública de cero tolerancia contra el crimen, lograr que las agencias de orden público sean más efectivas en esa lucha y **promover mayor seguridad y bienestar público para el Pueblo**". (Énfasis nuestro). *Íd.*, pág. 781.

Así pues, habiendo revisado todo lo concerniente al derecho constitucional a poseer y portar armas de fuego, tanto en la esfera federal como en la local, procedemos a considerar nuestra legislación en materia de armas.

### III.

Como ya mencionamos anteriormente, en *Pueblo v. Rodríguez López et al.*, *supra*, este Tribunal resolvió que nuestro ordenamiento regulatorio en torno al derecho fundamental de poseer y portar armas de fuego es constitucionalmente válido a la luz de la más reciente jurisprudencia federal al respecto. De igual forma, en el referido caso manifestamos que nuestro requerimiento de una licencia para poseer y portar armas persigue la consecución de una política pública de cero tolerancia contra el crimen y mayor seguridad y bienestar público. *Íd.*, pág. 782.

En esa dirección, y como parte de su poder de razón de estado, la Asamblea Legislativa facultó a la Policía de

Puerto Rico, y en particular a su Superintendente, con la autoridad para expedir licencias de armas de conformidad con la ley. Ley de Armas de 2000, Art. 2.01, 25 LPRA ant. sec. 456.[3] De igual forma, la ley proveyó a dicho funcionario la potestad para realizar las investigaciones pertinentes y denegar o revocar las solicitudes o licencias cuando hubiera fundamento en ley para ello. Véase, *Íd.*, Art. 2.02, incisos (A) y (B), 25 LPRA ant. sec. 456a. **De este modo, la Ley de Armas de 2000 "designó a la Policía – junto a su Superintendente – como el ente administrativo especializado para regular lo relacionado con la concesión de las armas [de fuego]".** (Énfasis nuestro). *Pueblo v. Barahona Gaitán*, 201 DPR 567, 577-578 (2018).

A esos fines, y en aras de crear un marco conceptual que guíe la función de la Policía de Puerto Rico, la Ley de Armas de 2000 establece un listado de requisitos que una persona debe cumplir para poder obtener una licencia de armas.[4] Art. 2.02, 25 LPRA ant. sec. 456a. En lo pertinente

---

[3] Antes de comenzar la discusión es preciso señalar que, a pesar de que los hechos que nos conciernen ocurrieron en el año 2021, la Ley de Armas aplicable al caso de marras es la del año 2000. Esto, debido a que según dispone el Artículo 7.24 de la Ley Núm. 168-2019, mejor conocida como la Ley de Armas de Puerto Rico de 2020, las disposiciones de la Ley de Armas de Puerto Rico del año 2000 (en adelante, "Ley de Armas de 2000"), 25 LPRA ant. sec. 455 *et seq.*, continuarán siendo "aplicables a las licencias obtenidas o renovadas bajo su vigencia, hasta que tales licencias venzan o se renueven bajo esta Ley". Art. 7.24 de la Ley Núm. 168-2019 (2019 [Parte 3] Leyes de Puerto Rico 2226). Así las cosas, y dado que la licencia de armas del señor Morales Roldán se expidió en el año 2018, repasaremos las disposiciones aplicables de la Ley de Armas de 2000, *supra*.

[4] El Artículo 1.02 de la referida Ley de Armas de 2000 define la "licencia de armas" como "aquella licencia concedida por el Superintendente [de la Policía] que autorice al concesionario para tener, poseer y transportar armas, sus municiones, y dependiendo de su categoría, portar armas de fuego, tirar al blanco o cazar". 25 LPRA ant. sec. 455o.

a la controversia ante nuestra consideración, la referida disposición legal indica que, para poder obtener una licencia de armas, la persona solicitante de la misma debe, además de tener cumplidos los veintiún (21) años de edad,

> (7) no estar bajo una orden del tribunal que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, alguno de los niños de ese compañero o a persona alguna, y no tener un historial de violencia.
>
> […]
>
> (12) someter en su solicitud una (1) declaración jurada de tres (3) personas que no tengan relación de consanguinidad o afinidad con el peticionario y que so pena de perjurio, atestigüen que el peticionario goza de buena reputación en su comunidad, y que no es propenso a cometer actos de violencia, por lo que no tienen objeción a que tenga armas de fuego. *Íd.*, 25 LPRA sec. 456a (1), (7) y (12).[5]

Es decir, en los precitados incisos siete (7) y doce (12) de la disposición legal en cuestión se establece que uno de los requisitos para poder obtener una licencia de armas es que la persona solicitante atestigüe que no posee un historial de violencia y que goza de buena reputación en la comunidad.

Además, y cónsono con lo anterior, la Ley de Armas de 2000 también establece que la persona que haya sido convicta de cualquier delito grave o su tentativa, o por conducta constitutiva de violencia doméstica según tipificada en la Ley Núm. 54 de 1989, *infra*, no podrá obtener la referida

---

[5] En cambio, valga destacar que la Ley de Armas de Puerto Rico de 2020, *supra*, no contiene como requisito el atestiguar que el solicitante posee buena reputación en su comunidad y que no es propenso a cometer actos de violencia. De igual forma, tampoco es un requisito expreso el no tener un historial de violencia. *Véase*, Art. 2.02 de la Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 462a.

licencia o, de tenerla, se le revocará la misma. Art. 2.11, Ley de Armas de 2000, 25 LPRA sec. 456j.

**De otra parte, y como medida protectora, la disposición legal bajo estudio dispone también que, cuando a una persona que posea licencia de armas se le encuentre causa probable para arresto por la comisión de cualquiera de los delitos especificados en el Artículo 2.11 de la ley, -- dentro de los cuales se encuentra toda "conducta constitutiva de violencia doméstica según tipificada en la Ley Núm. 54 de 15 de agosto de 1989" --, o por violaciones a la propia Ley de Armas de 2000, el tribunal en cuestión suspenderá provisionalmente la referida licencia hasta tanto culmine el proceso criminal.** (Énfasis nuestro). *Íd.*, Art. 2.07, ant. sec. 456f.[6] Además, el referido foro judicial ordenará la ocupación inmediata de la totalidad de las armas y municiones de la persona, las cuales serán custodiadas por la Policía de Puerto Rico. *Íd.* **Una vez la persona acusada obtenga "una determinación de no culpabilidad, final y firme, el juez ordenará la inmediata devolución de su licencia de armas y de las armas y municiones".** (Énfasis nuestro). *Íd.*

Sin embargo, si bien la Ley de Armas de 2000 establece, como vimos, lo que procede una vez la persona que ostenta

---

[6] Por su parte, cabe señalar que el Artículo 2.08 de la Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 462g, dispone que, tras la determinación de causa probable para arresto contra una persona que posea licencia de armas de fuego, el tribunal de instancia ordenará "la suspensión provisional e incautación de la licencia" de dicha persona **hasta que exista una determinación final y firme en el proceso criminal**. Sin embargo, en cuanto a la **ocupación de las armas** como consecuencia del inicio de la acción penal, el nuevo estatuto contiene el mismo lenguaje que su homólogo del año 2000. A saber, que la **devolución inmediata de las armas** procederá solo cuando el acusado obtenga una determinación de no culpabilidad final y firme.

una licencia de armas obtiene una determinación de no culpabilidad, final y firme, en determinado proceso judicial, nada dice sobre lo que corresponde hacer con la licencia y armas de fuego ocupadas a una persona acusada de los delitos que contempla el estatuto y cuyo caso se desestima. Se trata, además, de un asunto que este Tribunal nunca ha tenido la oportunidad de discutir.

No obstante, podemos mencionar, de manera persuasiva, que algunos paneles del Tribunales de Apelaciones sí han abordado el asunto, aunque de forma distinta.[7] Así, por ejemplo, en el caso *Santiago Mercado v. Fernández Obret*, KLCE202201046, un panel del foro apelativo intermedio, -- compuesto por los jueces Sánchez Ramos, Rivera Torres y Salgado Schwarz --, concluyó que tras el desistimiento de una solicitud de orden de protección bajo la Ley Núm. 54 de 1989, *infra*, el peticionado al que se le habían ocupado la licencia y armas de fuego al amparo del Artículo 2.1 de la Ley Núm. 54 de 1989, *infra*, no tenía derecho a una devolución inmediata de sus armas y licencia. Esto, debido a que el Artículo 2.08 de la Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 462g, (equivalente al Artículo 2.07 de la Ley de Armas de 2000, *supra*) solo contempla tal escenario cuando existe una determinación de no culpabilidad, final y firme.

---

[7] *Véanse*, *Rosado Cruz v. Rosa Rivera*, KLCE202201313; *Freire Díaz v. Aponte Porrata*, KLCE202200635; *Moreno Irizarry v. Medina Rivera*, KLCE202200024; *González Rosario v. Negociado de la Policía de Puerto Rico*, KLRA202100238.

Así pues, en el citado caso el Tribunal de Apelaciones determinó que lo que correspondía era que el Tribunal de Primera Instancia evaluara, luego de recibir un informe sobre la postura de la Policía, si procedía o no la devolución de las armas y licencia a la luz de lo que dispone la Ley de Armas de Puerto Rico de 2020, *supra*. *Santiago Mercado v. Fernández Obret*, *supra*, pág. 4.

De igual manera, en el caso *Freire Díaz v. Aponte Porrata*, KLCE202200635, expirada una orden de protección al amparo de la Ley para la Prevención e Intervención con la Violencia Doméstica, *infra*, contra el señor Emmanuelle Aponte Porrata, éste solicitó al Tribunal de Primera Instancia la devolución de su licencia de armas. Ante dicha petición, el foro primario replicó no ha lugar. Inconforme, el señor Aponte Porrata solicitó la revisión al Tribunal de Apelaciones.

Examinado el asunto ante su consideración, el foro apelativo intermedio, -- en un panel compuesto por los jueces Bermúdez Torres, Grana Martínez y Adames Soto --, razonó que, siendo el proceso de orden de protección uno de naturaleza civil y no disponiendo la Ley de Armas de 2000, *supra*, de ningún proceso o directriz que guiara el accionar del Tribunal de Primera Instancia ante el vencimiento de una orden de este tipo, era necesario que, antes de ordenar la devolución de la licencia de armas en cuestión, la Policía de Puerto Rico emitiera una recomendación sobre si existía o

no impedimento para que el señor Porrata Aponte pudiera obtener su licencia de vuelta.

Por último, en el caso *Rosado Cruz v. Sosa Rivera*, KLCE202201313, el Tribunal de Apelaciones, -- en un panel compuesto por los jueces Figueroa Cabán, Grana Martínez y Rodríguez Flores --, determinó que ante la denegatoria, sin más, del Tribunal de Primera Instancia a una solicitud de devolución de licencia de armas y armas de fuego ocupadas como parte del proceso de expedición de una orden de protección, correspondía devolver el asunto al foro primario para que éste considerara si la devolución procedía o no según solicitado. Es decir, el foro apelativo intermedio razonó que la devolución del arma no operaba de forma automática.

Con esas decisiones en mente, y, toda vez que la situación planteada ante nuestra consideración está íntimamente relacionada con la Ley para la prevención e intervención con la violencia doméstica, *infra*, conviene discutir aquí la referida pieza legislativa.

IV.

Sabido es que la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54-1989 (en adelante, "Ley Núm. 54"), 8 LPRA secs. 601 *et seq.*, fue una pieza legislativa que se aprobó con el propósito de reiterar el compromiso del Estado en "proteger la vida, la seguridad y la dignidad de hombres y mujeres, independientemente de su sexo, estado civil, orientación

sexual, identidad de género o estatus migratorio" frente a la ola de violencia doméstica que arropa a la Isla. *Íd.*, Art. 1.2, sec. 601. En ese sentido, al aprobar el referido estatuto, la Asamblea Legislativa reconoció la necesidad de enfrentar la violencia doméstica fijando su atención en la naturaleza violenta y delictiva del problema, así como diseñando "medidas dirigidas a los agresores y medidas de protección para las víctimas". *Exposición de Motivos*, Ley Núm. 54, *supra*.

Entre las medidas antes señaladas se encuentran aquellas relacionadas con las órdenes de protección. En lo pertinente, el Artículo 2.1 de la Ley Núm. 54-1989, *supra*, dispone que:

> **Cuando el tribunal así lo entienda o emita una orden de protección o de acecho, de inmediato el tribunal ordenará a la parte promovida entregar a la Policía de Puerto Rico para su custodia, cualquier arma de fuego perteneciente al promovido y sobre la cual se le haya expedido una licencia de tener o poseer, o de portación, o de tiro al blanco, de caza o de cualquier tipo, según fuera el caso. La orden de entrega de cualquier arma de fuego[,] así como la suspensión de cualquier tipo de licencia de armas de fuego[,] se pondrá en rigor de forma compulsoria.** (Énfasis nuestro). *Íd.*, sec. 621.

De igual manera, el precitado Artículo expone que, como mínimo, la restricción al disfrute de la licencia de armas se extenderá por el mismo tiempo que dure la orden de protección. *Íd.* Además, del peticionado y poseedor de la licencia ser encontrado culpable por alguna violación a la orden de protección impuesta, la ley establece que la revocación de la licencia de armas será permanente. *Íd.* Detrás de todo ello, radica el interés legislativo de

"eliminar la posibilidad de que el imputado pueda utilizar cualquier arma de fuego para causarle daño corporal, amenaza o intimidación al peticionario o a los miembros de su núcleo familiar". *Íd.*

Sin embargo, y al igual que sucede con la Ley de Armas de 2000, *supra*, la Ley Núm. 54-1989, *supra*, también guarda silencio sobre qué procede hacer cuando la persona peticionada recibe un resultado favorable en el proceso que enfrenta. Así, lo único que dispone la referida Ley Núm. 54, en su Artículo 2.1, *supra*, es que la restricción al uso de la licencia de armas y la ocupación de las armas durará, como mínimo, hasta tanto dure la orden de protección dictada contra el peticionado.

Así pues, habiendo examinado el derecho aplicable al caso de referencia y reconociendo los vacíos estatutarios que adolecen las legislaciones reseñadas, pasemos a disponer de la presente controversia. Al así hacerlo, tomamos en consideración aquellas normas de hermenéutica que postulan que en situaciones como estas nos corresponde interpretar los estatutos aplicables de forma armónica, dándoles sentido lógico y "supliendo las posibles deficiencias cuando esto fuere necesario". *Pizarro Rivera v. Nicot Santana*, 151 DPR 944, 951 (2000); véase, además, J. Farinacci Fernós, *Hermenéutica Puertorriqueña: cánones de interpretación judicial*, San Juan, Editorial InterJuris, 2019, pág. 156. Para ello, debemos aquilatar también las políticas públicas que persiguen las dos legislaciones en cuestión. A saber, la

Ley de Armas de 2000, *supra*, y la Ley Núm. 54, *supra*. Procedemos a ello.

V.

Como mencionamos anteriormente, en el presente caso el Pueblo de Puerto Rico arguye que el Tribunal de Apelaciones erró al sentenciar que el Tribunal de Primera Instancia estaba obligado en ley a devolver inmediatamente, y sin ulterior consideración, la licencia de armas y armas de fuego ocupadas al señor Morales Roldán como parte del procedimiento penal seguido en su contra. En consecuencia, nos solicita la devolución del caso al Tribunal de Primera Instancia para que se continúen los procedimientos pertinentes a la devolución de la licencia y arma de fuego ocupadas. Le asiste la razón al Estado.

Y es que, de conformidad con la normativa antes expuesta, y luego de haber evaluado la política pública que persigue tanto la Ley de Armas de 2000, *supra*, como la Ley Núm. 54, *supra*,[8] somos de la opinión que, previo a que el Tribunal de Primera Instancia decida si ordena o no la devolución de la licencia y el arma de fuego aquí ocupadas en virtud del Artículo 2.1 de la Ley Núm. 54, *supra*, o del Artículo 2.07 de la Ley de Armas de 2000, *supra*, dicho foro

_____

[8] Como es sabido, la Ley de Armas de 2000, *supra*, persigue el propósito de establecer un gobierno con cero tolerancia contra el crimen, lograr un ambiente de paz, tranquilidad y alcanzar una mayor seguridad pública. Por otro lado, la Ley para la Prevención e Intervención con la Violencia Doméstica, Núm. 54-1989, 8 LPRA secs. 601 *et seq.*, aspira a atender "las dificultades que las situaciones de violencia doméstica presentan para toda víctima […] para preservar su integridad física y emocional, procurar su seguridad y salvar sus vidas". *Exposición de Motivos*, Ley Núm. 54, *supra*.

debería ordenar a la Policía de Puerto Rico, -- ente administrativo especializado, y facultado, en lo relacionado a la concesión de licencia de armas de fuego, y, además, el custodio de las armas ocupadas --, a realizar la investigación pertinente y expresar su parecer sobre la aptitud de la persona para poseer y portar armas de fuego.[9] Esto, a la luz de los criterios y requisitos que establece la Ley de Armas de 2000, *supra*. En dicho proceso, la Policía de Puerto Rico podría determinar si la referida persona exhibe o no un historial de violencia que lo inhabilite para poseer y portar armas de fuego. Con el beneficio de dicha investigación, el tribunal estaría en una mejor posición para tomar una decisión informada en tan delicado asunto que atienda la urgente política pública de protección y seguridad a las víctimas de violencia doméstica.

**A nuestro juicio, y como ya mencionamos, el procedimiento que proponemos para la devolución de armas de fuego en casos como el de autos, es el que mejor armonizaría**

---

[9] A esos fines, en el caso de *Rolón Martínez v. Supte. Policía*, *supra*, este Tribunal resolvió que tras la ocupación de unas armas de fuego y una licencia de armas como consecuencia de un proceso de solicitud de orden de protección instado bajo la Ley Núm. 54 de 1989, *infra*, la Policía de Puerto Rico tenía la facultad de realizar una investigación sobre las cualidades del poseedor de la licencia y revocársela si lo entendía meritorio. Esto, aun cuando la persona poseedora de la licencia de armas hubiese salido airosa en el proceso en su contra. Es decir, la Policía puede revocar la licencia de armas si, no habiendo una determinación de no culpabilidad, el poseedor de la misma obtiene un resultado favorable en el proceso criminal en su contra, -- como, por ejemplo, una desestimación de los cargos --, pero aun así la Policía concluye que éste no es, a la luz de los requisitos que dispone el Artículo 2.02 de la Ley de Armas de 2000, *supra*, una persona apta para poseer armas de fuego. Entre dichos requisitos se encuentra el no tener historial de violencia. Sobre esto último, en el citado caso también resolvimos que contar con un historial de violencia no suponía necesariamente el tener convicciones penales previas y que bastaba con que la Policía de Puerto Rico concluyera que la persona en cuestión había incurrido en actos de violencia o propendía a cometerlos. *Íd.*, pág. 44.

los importantes intereses que aquí yacen en pugna. Por un lado, y distinto a lo que hoy pauta una Mayoría de este Tribunal, brindaría coherencia procesal al facultar al propio Tribunal de Primera Instancia que ordena la incautación de la licencia y arma de fuego a realizar su devolución. Igualmente, y por otro lado, integraría la participación experta de la Policía de Puerto Rico quien es la entidad administrativa con la pericia necesaria para resolver estos asuntos, y cuyo insumo guiaría la determinación que en su día tomase el foro judicial correspondiente.

Debemos destacar, no obstante, que el procedimiento que aquí proponemos no supone que el Tribunal encomendado con la tarea de devolver la licencia y arma de fuego incautadas venga obligado a acatar la recomendación que a esos fines emita la Policía de Puerto Rico. Somos del parecer que el foro judicial correspondiente tendría la discreción para determinar, dentro de las circunstancias particulares de cada caso, lo que en derecho estime correcto.

Así las cosas, en un caso como el de autos, habiéndose culminado el proceso penal que enfrentaba el señor Morales Roldán, mas no tratándose de una determinación de no culpabilidad final y firme como erróneamente concluyó el Tribunal de Apelaciones,[10] correspondía, pues, aplicar un

---

[10] Según ya hemos mencionado, la Ley de Armas de 2000, *supra*, es clara en que la devolución inmediata de las armas y licencia de armas ocupadas como resultado del inicio de una acción penal contra el poseedor de las mismas solo procede cuando la persona obtiene una determinación de no culpabilidad final y firme. Empero, es sabido que una desestimación por violación a los términos de juicio rápido que contempla la Regla 64(n) de las de Procedimiento Criminal, 34 LPRA Ap. II, no es sinónimo ni equivalente a una determinación de no culpabilidad o absolución. *Véase*,

procedimiento de devolución de licencia y arma de fuego como

el que aquí hemos propuesto.[11]

---

*Currier v. Virgina*, 138 S. Ct. 2144 (2018); *U.S. v. Scott*, 437 US 82 (1978); y E. Chiesa Aponte, *Procedimiento Criminal y la Constitución: etapa adjudicativa*, San Juan, Ediciones SITUM, 2018, págs. 586-587. Por lo tanto, en el presente caso el Tribunal de Primera Instancia no estaba obligado a entregar las armas y licencia de forma inmediata.

[11] Por último y no menos importante, tal y como reseñamos en la exposición fáctica, en su alegato el señor Morales Roldán arguyó que el argumento y propuesta esbozado por el Ministerio Público, así como la propia ocupación de sus armas de fuego como consecuencia de una denuncia en su contra por violación a la Ley Núm. 54, *supra*, eran inconstitucionales por infringir con su derecho fundamental a la posesión y portación de armas de fuego. Para ello, se basó en la jurisprudencia federal interpretativa de la Segunda Enmienda y en el caso del Tribunal Apelativo Federal, *US v. Rahimi*, 61 F. 4th 443 (5to Circuito, 2023),-- caso cuya revisión aun pende ante la consideración del Tribunal Supremo de los Estados Unidos, por lo que la decisión, aunque posiblemente persuasiva, no nos es vinculante --.

Sobre el particular, podemos expresar que la controversia allí planteada es distinguible de la que hoy nos ocupa. Ello debido a que, en el presente caso, el Estado no está criminalizando el ejercicio del derecho constitucional del señor Morales Roldán como, se podría argüir, lo hace la legislación penal federal allí en controversia. Todo lo contrario, en la situación de marras, el Estado, -- mediante la acción confiscatoria que provee el Artículo 2.07 de la Ley de Armas de 2000, *supra*, --, solo cumple con su deber de velar por el bienestar y seguridad de los ciudadanos, y únicamente incide temporalmente en el ejercicio del referido derecho constitucional. Ello, en el contexto de un proceso criminal que pendía contra el señor Morales Roldán.

Por tanto, la ocupación preventiva y provisional de las armas de fuego y la licencia de armas puede verse como parte de la tradición histórica, y constitucionalmente validada, de limitar el derecho constitucional a la posesión y portación de armas de fuego, -- que como ya hemos dicho, no es absoluto ni ilimitado --, a las personas no aptas para ello. Véase, *District of Columbia v. Heller*, *supra*, págs. 626-627 (2008). De hecho, el propio Tribunal de Apelaciones federal para el Quinto Circuito expresó en *US v. Rahimi*, *supra*, pág. 452 esc. 6, que la discusión contenida en esa Opinión no tenía el propósito de poner en tela de juicio la validez de las limitaciones a la posesión y portación de armas de fuego que se imponen durante la celebración de un proceso penal y antes de una convicción ("*[t]his discusión is not to cast doubt on firearm restrictions that attach during criminal proceedings prior to conviction*").

Al final, dado el resultado obtenido en el proceso penal que enfrentó, el señor Morales Roldán podrá gozar nuevamente de su derecho constitucional a la posesión y portación de armas de fuego si la Policía de Puerto Rico entiende que, -- tal y como concluyó en la ocasión en la que le concedió su licencia --, éste cumple con la aptitud necesaria en ley para disfrutar de dicho derecho, y el Tribunal de Primera Instancia así lo estima correcto.

## VI.

Es, pues, por todo lo anterior que concurro con el resultado al que llega una mayoría de este Tribunal en el día de hoy.


Ángel Colón Pérez
Juez Asociado